# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WEN-CHOUH LIN,                        )
                                 )
      Plaintiff,          )
                                 )
     v.                  )      1:09CV882
                                 )
RICHARD BRODHEAD, DEBORAH             )
JAKUBS, and DUKE UNIVERSITY,          )
                                 )
      Defendants.         )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge on Defendants' Motion to Stay Proceedings Pending Arbitration or, in the Alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Improper Venue (Docket Entry 8), and Plaintiff's Motions to Amend (Docket Entries 16, 23). (See Docket Entries dated Feb. 18, 2010, June 23, 2010, and Dec. 1, 2011; see also Docket Entry dated Jan. 23, 2010 (assigning case to undersigned Magistrate Judge).) For the reasons that follow, Defendants' Motion to Stay or Dismiss should be denied in part and Plaintiff's Motions to Amend will be deferred.

## I.  Background

According to the Complaint, Defendant Duke University ("the University") hired Plaintiff, an Asian male over the age of 40, in 1968. (Docket Entry 1, ¶¶ 9, 11, 12, 14.) The Complaint further asserts that "[b]etween 1984 and 1989 the Plaintiff filed

complaints of discrimination with [the] U.S. Equal Employment Opportunity Commission [('EEOC')], alleging non-promotion, unequal pay, and unfair tuition benefits for children." (Id. ¶ 15.) On January 9, 2009, the University allegedly notified Plaintiff that it would eliminate his position for purposes of outsourcing, effective January 8, 2010. (Id. ¶ 16.) The Complaint alleges that Plaintiff was "the only one whose position was eliminated by outsourcing in 2009 without reassignment and/or compensation." (Id. ¶ 20.) It further asserts that "no other similarly situated employees outside the protected classes with less seniority than the Plaintiff's were targeted for the reduction in force as the Plaintiff was, or were targeted for the reduction in force like the Plaintiff but were reassigned to other positions unlike the Plaintiff." (Id. ¶ 21.)

Plaintiff filed the instant lawsuit against the University, the University President, and the University Librarian and Vice Provost for Library Affairs (see id. ¶¶ 4, 6, 7) claiming "entitle[ment] to relief under Title VII [of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ('Title VII')] and [the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ('ADEA')] for his employer's unlawful discriminatory conduct and retaliation, including but not limited to for the Employer's disparate treatment of the Plaintiff for engaging in protected activities." (Id. ¶ 25.)

2

Defendants filed the instant Motion to Compel Arbitration (Docket Entry 8), to which Plaintiff has responded (Docket Entry 11) and Defendants have replied (Docket Entry 13). Plaintiff subsequently filed the instant Motions to Amend (Docket Entries 16, 23), which the Parties likewise have fully briefed (see Docket Entries 18, 20, 25, 26).

## II. Discussion

### *A. Motion to Compel Arbitration*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, establishes "a liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. . . . Thus, . . . agreements to arbitrate must be enforced . . . ." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985) (emphasis in original). In determining whether to compel arbitration, a court should consider:

> "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute."

<u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir.

1991)).  If the court concludes a valid arbitration agreement which covers the dispute at issue exists, it must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  If, however, "the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  Put differently, "when a question of fact arises as to the presence of an agreement to arbitrate, the issue may not be determined on the affidavits; rather a trial, either bench or jury, is required."  Minter v. Freeway Food, Inc., No. 1:03CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004) (unpublished) (Bullock, J.).

"'In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . courts apply a standard similar to that applicable to a motion for summary judgment.'"  Id. (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  Accordingly, the Court should compel arbitration "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Such a genuine dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  In making this determination, the Court must view the evidence and any reasonable inferences therefrom in

4

a light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The moving party may discharge its burden by identifying an absence of evidence to support the non-moving party's case.  <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*."  <u>Matsushita Elec. Indus.</u>, 475 U.S. at 586-87 (citation omitted) (emphasis in original).  In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 252 (citation omitted); <u>see also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a  summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

In determining whether a party agreed to arbitrate a particular dispute, "the court should apply 'ordinary state-law principles that govern the formation of contracts.'" <u>Johnson v. Circuit City Stores</u>, 148 F.3d 373, 377 (4th Cir. 1998) (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)).  Under North Carolina law, "[a] valid contract requires [1] offer, [2] acceptance, [3] consideration and [4] no defenses to formation." <u>Koltis v. North Carolina Dep't of Human Res.</u>, 125 N.C.

5

App. 268, 271, 480 S.E.2d 702, 704 (1997) (citing <u>Copy Prods., Inc.</u> <u>v. Randolph</u>, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983)). Moreover, "North Carolina has a strong public policy favoring the settlement of disputes by arbitration. [Said] strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." <u>Johnston Cnty. v. R.N.</u> <u>Rouse & Co., Inc.</u>, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992).

In this case, the only material question at issue concerns whether the Parties entered into an agreement to arbitrate their disputes. (<u>See</u> Docket Entry 11 at 1-3.) As to that matter, Plaintiff acknowledges that in May of 2006 he received a copy of the Duke Staff Handbook ("the Handbook"). (Docket Entry 12-2, ¶ 2; Docket Entry 12-3 at 2.) The Handbook gives an overview of the University's Dispute Resolution Process (<u>see</u> Docket Entry 9-6 at 3), which includes: (1) a "Face-to-Face Discussion" with the staff member and his supervisor, (2) consideration by a Dispute Review Panel of three University staff members in the event the discussion does not result in a resolution, and (3) arbitration "[i]f the decision that is rendered as a result of the Dispute Review Panel leaves the dispute unresolved and the dispute relates to or involves involuntary termination, or includes allegations of sexual harassment or discrimination" (<u>id.</u>). The Handbook further states that "[a]ny claim based in whole or in part on federal, state or

6

local laws whether statutory or common law <u>shall</u> be addressed through this procedure." (<u>Id.</u> (emphasis added).)

The Handbook also contains a "Disclaimer," although the Parties disagree about the version of the Disclaimer in the Handbook provided to Plaintiff in May of 2006. (<u>See</u> Docket Entry 9 at 4 (citing Docket Entry 9-6 at 4); Docket Entry 11 at 2 (citing Docket Entry 12-4 at 3).) The Disclaimer in the Handbook that Defendants contend Plaintiff received reads as follows:

> <u>Except as provided in the applicable grievance or dispute resolution procedures</u>, information contained in any handbook, manual or document prepared for or relating to non-exempt and exempt staff <u>is for informational purposes only and shall not be construed as a contract</u>. <u>Agreement to the terms of the applicable grievance or dispute resolution procedure</u>, as may be periodically amended and which is available upon request from the Office of Human Resources, <u>is a condition of employment and continuing employment</u>.

(Docket Entry 9-6 at 4 (emphasis added).) In contrast, in the version of the Handbook Plaintiff claims to have received, the Disclaimer states:

> <u>The policies set forth in this handbook are not intended to create a contract</u>, nor are they to be construed as constituting contractual obligations of any kind, and the handbook is certainly not to be considered as an employment contract between Duke and any of its staff.

(Docket Entry 12-4 at 3 (emphasis added).) Both versions of the Disclaimer state that, "while this handbook strives to be a wide-ranging information resource, it should not be understood as a full-replacement of Duke's official policies or of its more

7

comprehensive procedures and guidelines." (Docket Entry 9-6 at 4; Docket Entry 12-4 at 3.)

On June 7, 2006, Plaintiff signed a form entitled "Duke Staff Handbook: Acknowledgement of Receipt" ("Acknowledgement") (see Docket Entry 9-7) which states: "My initials and signature indicate that I *have reviewed* and *had the opportunity to discuss with a supervisor* any questions that I have had regarding the content of this handbook" (id. at 2 (emphasis in original)). Plaintiff's initials appear next to each policy or document listed on the form, including "DISPUTE RESOLUTION PROCESSES," and his signature appears at the bottom. (Id.; see also Docket Entry 12-2, ¶ 3.) Plaintiff, however, claims:

> my supervisor, Lois Schultz, presented to me [a] one page sheet containing the Acknowledgement and [sic] Receipt page of the Duke Staff Handbook and requested me to sign. So, I did.

> No one, including my supervisor Ms. Schultz or anyone else, went over the Handbook with me. No one explained or informed me of the Dispute Resolution Process (DRP) when the Handbook was provided to me, including the Defendants' belated assertion that agreement to participate in the DRP constituted part of conditions of my employment or continuing employment, that by signing the Acknowledgement and [sic] Receipt I was entering into an arbitration agreement (for any dispute arising from my employment), or that an employee such as I must utilize DRP with final and binding arbitration decision and without recourse to or prior to litigation at the federal, state, or municipal court.

(Docket Entry 12-2, ¶¶ 3-4.)

Under North Carolina law, "unilaterally promulgated employment manuals or policies do not become part of the employment contract

8

unless expressly included in it." <u>Walker v. Westinghouse Elec.</u>
<u>Corp.</u>, 77 N.C. App. 253, 259-60, 335 S.E.2d 79, 83-84 (1985)
(citations omitted); <u>see also</u> <u>Katsifos v. Pulte Home Corp.</u>, No.
COA03-429, 163 N.C. App. 204 (table), 592 S.E.2d 620 (table), 2004
WL 384368, at *2 (Mar. 2, 2004) (unpublished) (holding that
employee handbook which included disclaimer stating "nothing in
this handbook is intended to create or constitute an employment
agreement" did not "create[] a contract").  Although a contract
"may be supplemented by additional agreements which are
enforceable," <u>Martin v. Vance</u>, 133 N.C. App. 116, 121, 514 S.E.2d
306, 309 (1999), before such additions become valid "there must be
a mutual agreement between the parties as to the terms" (<u>id.</u>).
"'If a question arises concerning a party's assent to a written
instrument, the court must first examine the written instrument to
ascertain the intention of the parties.'"  <u>Id.</u> (quoting <u>Routh v.</u>
<u>Snap-On Tools Corp.</u>, 108 N.C. App. 268, 273, 423 S.E.2d 791, 795
(1992)).

Nothing in the Acknowledgement indicates that, by signing,
Plaintiff agreed to adhere to any policies or procedures, either as
provided in the Handbook or as explained through other
representations of the University's policies; rather, the
Acknowledgement simply states that the employee received and
reviewed the Handbook.  (<u>See</u> Docket Entry 9-7 at 2.)  Nor does the
Acknowledgement explain that the Dispute Resolution Process

9

constitutes a mandatory part of the employee's contract, much less

that the employee agrees to such terms.  (See id.)[1]

---

[1]      Plaintiff points to Kummetz v. Tech Mold, Inc., 152 F.3d
1153 (9th Cir. 1998), to support his argument that the
Acknowledgement "failed to mention any waiver of or precondition to
exercising litigation rights at the court, or any requirement to
participate in DRP" and therefore "there is in [sic] no way in
which Plaintiff can be construed as having entered an arbitration
agreement . . . ."  (Docket Entry 11 at 7-8.)  In Kummetz, the
plaintiff signed a form acknowledging receipt of the Employment
Information Booklet provided by his employer. Kummetz, 152 F.3d at
1154.  The form indicated that the plaintiff understood that he was
"'covered by and must abide by the contents of [the] Booklet,'"
although the Booklet "'in no way constitutes an employment contract
. . . .'"  Id.  The arbitration provision contained in the Booklet
was unambiguous: "'The Company and the employee shall submit to
arbitration, as provided in the Dispute Resolution Policy, any
alleged unlawful employment discrimination, termination or
employment tort or benefit claim during or following employment.
The parties waive all rights to a trial, with or without a jury,
for resolution of any dispute covered by this policy.'"   Id.
Nevertheless, the Ninth Circuit concluded that, because the
acknowledgement form did not mention the arbitration provision,
"the presence of the [arbitration] clause in the Booklet is
insufficient . . . to effect a waiver [of the plaintiff's
litigation rights under the Americans with Disabilities Act ('the
ADA')].   Only if [the employer] had specifically called [the
plaintiff's] attention to the arbitration clause in the Booklet
would the clause suffice in the face of the uninformative
Acknowledgement."  Id. at 1155-56.  Although Kummetz bears many
similarities to this case, this Court must look, not to Ninth
Circuit law about what circumstances warrant arbitration of ADA
claims, but rather to North Carolina law regarding the
circumstances necessary to establish an agreement to arbitrate.
See Johnson, 148 F.3d at 377.  As discussed below, North Carolina
law indicates that an individual who signs a document, like the
Acknowledgement, has notice of the contents of the related
materials.  Martin, 133 N.C. App. at 121-22, 514 S.E.2d at 310.
Furthermore, the Ninth Circuit clarified that it "[did] not mean to
suggest that one who is aware that he or she is entering a contract
may avoid its effect by failing to read it."  Kummetz, 152 F.3d at
156.  Rather, "nothing in the Acknowledgement that [the plaintiff]
signed or the circumstances of record suggested that [the
plaintiff] was entering a contract."  Id.  In the instant case, as
discussed below, Plaintiff may have entered into an agreement to

10

If Plaintiff received the Handbook containing the Disclaimer he claims (i.e., the one stating that "[t]he policies set forth in this handbook are not intended to create a contract" (Docket Entry 12-4 at 3)), he did not enter into an arbitration agreement. <u>See</u> <u>Katsifos</u>, 2004 WL 384368, at *2. If, on the other hand, the Disclaimer presented to Plaintiff read as Defendants allege, Plaintiff's signing of the Acknowledgement would establish an agreement to arbitrate, because:

(1) that disclaimer language clearly states that "[a]greement to the terms of the . . . dispute resolution procedure . . . is a condition of employment and continuing employment" (Docket Entry 9-6 at 4); and

(2) by signing the Acknowledgement, Plaintiff asserted that he "*reviewed* . . . the content of this handbook," including the dispute resolution processes (Docket Entry 9-7 at 2 (emphasis in original)).

Despite Plaintiff's protestations that no one explained the handbook or dispute resolution policy to him, in North Carolina, "'one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents . . . he is held to have signed with full knowledge and assent as to what

_____

arbitrate by signing the Acknowledgement (depending upon the nature of the Disclaimer contained in the Handbook he received).

11

is therein contained.'" Martin, 133 N.C. App. at 121-22, 514 S.E.2d at 310 (quoting Gas House Inc. v. Southern Bell Tel. Co., 289 N.C. 175, 180, 221 S.E.2d 499, 503 (1976)). Furthermore, "the Court of Appeals of North Carolina has held . . . that continuing employment after learning of the existence of a [dispute resolution procedure] constitutes an employee's agreement to be bound by an arbitration agreement." Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (citing Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 120-21, 516 S.E.2d 879, 882-83 (1999)).[2] Plaintiff in this case continued his employment for at least two and a half years after signing the Acknowledgement. If Plaintiff received the version of the disclaimer language Defendants allege the University provided him, he agreed to arbitrate the instant claim.

Defendants argue that, regardless of which Disclaimer Plaintiff received, neither the Disclaimer nor the Handbook "purport[ed] to negate the plain language of the *Dispute Resolution Policy*, which Plaintiff admits that he received and admits acknowledging in writing he received. . . . On their face, the

---

[2] In Howard, the terms of the dispute resolution program "unambiguously bound [the plaintiff] to the agreement should she continue employment" through a specified date. Howard, 134 N.C. App. at 120, 516 S.E.2d at 882. The materials provided to the plaintiff reflected that the dispute resolution program represented the exclusive means of resolving disputes concerning termination, although the plaintiff did not sign any acknowledgement or agreement. Id. at 117. Those facts differ from this case in that the Parties dispute what disclaimer language regarding the dispute resolution processes Plaintiff received.

12

[University's] policies and procedures themselves are binding on employees, not the summary provisions of the Handbook." (Docket Entry 13 at 4.) However, nothing in the Acknowledgement indicates that Plaintiff received notice of the actual Dispute Resolution Policy; rather it indicates Plaintiff reviewed the procedures outlined in the Handbook. (See Docket Entry 9-7 at 2.) Standing alone, the University's "unilaterally promulgated employment manuals or policies" do not constitute part of Plaintiff's employment contract "unless expressly included in it." Walker, 77 N.C. App. at 259-60, 335 S.E.2d at 83-84. Whether the University's dispute resolution policy became a part of Plaintiff's contract thus depends on which version of the Disclaimer appeared in the Handbook he received.

As a final matter, Plaintiff argues that, whether or not an agreement to arbitrate existed, the dispute resolution procedures were denied to him. (See Docket Entry 11 at 3-6.) Plaintiff's allegations, however, do not support that conclusion. In this regard, Plaintiff admits that the letter informing him of the elimination of his position also stated that he had recourse to the "rights of Staff Affected by Reduction in Force." (Id. at 4; see also Docket Entry 12-5 at 2.) These rights included "'[t]he right to question, through the Duke Dispute Resolution Process, the specific provisions of the reduction-in-force process and how they were applied to the staff member.'" (Docket Entry 11 at 4 (quoting

13

Docket Entry 12-6 at 2).)  Plaintiff asserts that he then received a follow-up letter stating that in fact "'the documentation on Continuing Appointment overrides the University Policy on Reductions in Force.'" (Docket Entry 11 at 4 (quoting Docket Entry 12-7 at 2).)  Pursuant to the Continuing Appointment policy, Plaintiff allegedly believed the University would attempt to reassign him to a new position.  (Id.; see also Docket Entry 12-7 at 2 (explaining Continuing Employment procedures and stating University would "work with [Plaintiff] to reassign [him] to another position should a position for which [he was] qualified become available").)

According to Plaintiff, he thus "was lead [sic] to believe that under the University policy on Continuing Appointment, his rights including the right to a resource through DRP (provided under Defendants' Rights of Staff Affected by a Reductions-in-Force policy) was [sic] not available and was [sic] superseded by Continuing Appointment policy."  (Docket Entry 11 at 5; see also Docket Entry 12-7 at 2-3 ("The documentation on Continuing Appointment does not contain other provisions for additional benefits for staff affected by an elimination of their position.").)  Although the letter in question indicates that "the process outlined in the documentation on Continuing Appointment overrides the University Policy on Reductions in Force" (Docket Entry 12-7 at 2), it does not specifically refer to or revoke the

14

dispute resolution process (see id. at 2-3). Furthermore, nothing in the documentation on Continuing Appointment forecloses resort to the dispute resolution process. (See Docket Entry 12-8.) These circumstances do not support an inference that Plaintiff suffered a denial of access to the University's dispute resolution procedure.

In sum, a material question of fact exists concerning whether the Parties actually reached an agreement to arbitrate. As a result, that issue requires resolution by trial. See 9 U.S.C. § 4; Minter, 2004 WL 735047, at *2. "If no jury trial be demanded by the party [opposing arbitration] . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Plaintiff did not timely demand trial by jury of this issue pursuant to either 9 U.S.C. § 4 or Federal Rule of Civil Procedure 38. (See Docket Entries 11, 14.) Accordingly, trial of this issue should proceed before the Court. See Starr Elec. Co., Inc. v. Basic Const. Co., 586 F. Supp. 964, 967 (M.D.N.C. 1982) (Gordon, C.J.).

### B. Motions to Amend

Plaintiff filed a Motion to Amend (Docket Entry 16) whereby he requests leave to add a Title VII unequal pay claim to his Complaint (id. at 1-3). He then filed a second Motion for Leave to Amend (Docket Entry 23) in which he seeks to add a paragraph noting that the EEOC issued a right to sue letter on August 23, 2011 (id. at 1).

15

Should the Court determine that an agreement to arbitrate exists between the Parties, the Court would lack jurisdiction to address Plaintiff's Motions to Amend.  See Joyner v. GE Healthcare, C.A. No. 4:08-2563-TLW-TER, 2009 WL 3063040, at *4 (D.S.C. Sept. 18, 2009) (unpublished) (adopting report and recommendation of Magistrate Judge finding arbitration clause enforceable and absence of jurisdiction to rule on motion to amend complaint).  The Court therefore will defer ruling on the Motions to Amend pending resolution of the arbitration issue.

### III.  Conclusion

A material factual dispute exists as to whether Plaintiff agreed to an arbitration provision.  Accordingly, the Court should hold a bench trial to resolve which version of the disclaimer language the University provided to Plaintiff.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Stay Proceedings Pending Arbitration or, in the Alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Improper Venue (Docket Entry 8) be denied in part in that the Court should not compel arbitration at this time, but instead should hold a bench trial to determine whether Plaintiff received disclaimer language that would preclude a conclusion that the Parties reached an agreement to arbitrate.

16

**IT IS ORDERED** that Plaintiff's Motions to Amend the Complaint

(Docket Entries 16, 23) are **DEFERRED** pending resolution of the

arbitrability issue.


                                    /s/ L. Patrick Auld
                                 **L. Patrick Auld**
                        **United States Magistrate Judge**

October 9, 2012